NORTH CAROLINA (UNITED STATES v.). See Case No. 15,727.

NORTH CAROLINA R. CO. (SWASEY v.). See Case No. 13,679.

NORTHERN BANK OF KENTUCKY v. LABITUT. See Case No. 842.

## Case No. 10,319.

### The NORTHERN BELLE.

[1 Biss. 529.] [1]

District Court, D. Wisconsin. Sept. Term, 1866. [2]

PERILS OF THE SEA DEFINED — DUTY OF CARRIER AS TO VESSEL—BARGES—OPINIONS OF INSURANCE AGENTS OR SHIPPER NO EXCUSE.

1. A loss by perils of the sea or dangers of river navigation, includes only such as are of an extraordinary nature, or arise from irresistible force, or from inevitable accidents, or from some overwhelming power which cannot be guarded against by the ordinary exertions of human skill and prudence. In taking two loaded barges in a strong wind around a point where the channel was narrow and the water shallow,—but where one barge could have passed in safety,—the carrier is guilty of negligence.

2. The first duty of a carrier by water is to provide a sea-worthy vessel, tight and stanch, and suitable in every respect to the particular service in which she may be employed.

3. Barges, for bulk wheat must be firmly and well built, in the best manner, and of the best materials. It is just as necessary that they should be tight, stanch, and strong, as a ship or any other vessel.

4. Any opinions expressed by agents of the insurance company, or by the shipper, form no excuse. The whole responsibility of the sea-worthiness or fitness of the barge rests with the carrier.

This libel in admiralty was brought for the value of a cargo of wheat, shipped in bulk at Hastings, in Minnesota, on the barge Pat Brady, to be towed by the steamboat Keokuk on the Mississippi river, and delivered at La Crosse, in Wisconsin, in good order, the unavoidable dangers of river and fire only excepted. It is charged in the libel, that the barge was sunk and the wheat damaged, in consequence of the unseaworthiness of the barge, and of the negligence and unskillfulness of the officers and crew of the boat. The answer of respondent alleges, that the barge was tight, stanch and strong, and sea-worthy, and in every respect fit to perform the voyage; that the wheat was carefully stowed in the barge, which was taken in tow by the boat; that when opposite Prescott, the wind was so strong, and blew so hard, that it drove the barge on to a bar, so that the barge stranded on the bar; and while so grounded, and in consequence of the strain and injury thereby received, and the violence of the storm, the barge commenced leaking; that the failure to deliver the wheat at La Crosse was the result of unavoidable dangers of river navigation, and not, in any manner, of default of respondent, or of unseaworthiness of the barge. The boat and barge were used in the business of carrying wheat in bulk.

[See Case No. 7,721.]

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Affirmed by circuit court. Case unreported. Decree of circuit court affirmed by supreme court in 9 Wall. (76 U. S.) 526.]

J. H. Van Dyke, for libellant.
J. W. Cary, for respondent.

MILLER, District Judge. A loss by perils of the sea, or dangers of river navigation, includes such losses only to the cargo as are of an extraordinary nature, or arise from irresistible force, or from inevitable accidents, or from some overwhelming power, which cannot be guarded against by the ordinary exertions of human skill and prudence. If the loss occurs by a peril which might have been avoided by the exercise of any reasonable skill or diligence at the time when it occurred, it is not deemed to be, in the sense of the phrase, such a loss by the perils of the sea or the dangers of the river, as will exempt the carrier from liability, but rather a loss by his gross negligence. A loss from the effects of storms and tempests, in straining the ship, or causing her to spring a leak, or ship a sea whereby damage or injury is done to the goods on board, are losses perfectly attributable to the perils of the sea; although in a mitigated sense, they may be said to be ordinary accidents. Story, Bailm. § 512, and cases referred to.

It appears from the evidence that the accident occurred in the daytime, and on a warm day in June. The water was so low that the barges had not over three-fourths of a load. The captain and pilot were well acquainted with the bar at Prescott, and knew that it was at that season one of the most troublesome bars in the river on account of low water. and that the turn around the point was very short. The pilot had never met with an accident there. They could have passed in the channel, which was 150 to 200 feet wide, in safety with one barge, and they knew that the wind that was blowing fresh all day, might be stronger at that point. The wind was not a breeze, but enough to make the boat flank some. The wind was not so strong as to require the pilot house to be closed, or to inconvenience the pilot. The accident was not unavoidable. One of the barges should have been taken through at a time. The pilot knew one barge could be taken through safely. He knew the bar, and the course of the wind, and the low stage of water; and with all this knowledge, he backed and attempted to force his heavily loaded boat and two barges through or over the sand bar, at the risk of breaking something. Lines might have been put forward to secure the boat from flanking, and should have been done. If the pilot was running on the starboard side of the channel, as testified by libellant, then he was in fault for not exercising more care and diligence to avoid the accident. The Louisiana, 3 Wall. [70 U. S.] 164-174. The carrier is in the light of an insurer, and must establish the exception in the bill of lading beyond a reasonable doubt. Pressure of the barge against the bar caused her seams to open.

After a thorough examination of the testimony, I am well satisfied that the barge was not of sufficient strength to carry wheat in bulk, safely, particularly at low stages of water. From her age and construction. she was not strong enough to resist the inward pressure of bulk wheat on her sides, and the outward pressure of a tow-boat and a second barge against the sand bar. Carriers on the river of bulk wheat stowed in barges, must have barges well and firmly built, in the best manner and of the best materials. A carrier's first duty, and one that is implied by law, when he is engaged in transporting goods by water, is to provide a sea-worthy vessel, tight and stanch, and suitable in every respect to the particular service in which she may be employed. It is just as necessary that a barge employed in carrying wheat in bulk, should be tight, stanch and strong, as a ship, or any other vessel. The cargo is liable to damage by wet; and by shifting and settling it presses hard on the walls of the barge. The barge Pat Brady does not come up to the requirements of the law. She was old and slightly built, with knuckles instead of knees. But five weeks prior to the accident in question, by being pressed against something when in tow of the steamboat Keokuk, the seams of this barge opened, and her butts sprung as in this case. Repairs were made on her by putting in some new timbers, but she still remained an old and weak barge, liable to give way at any time. Witnesses who examined her after the repairs, testify that portions of her timbers were entirely decayed. It is quite certain that the barge was not of sufficient strength to resist an effort to plough through a sand bar, or the pressure of short turns on a bar, for the sake of speed, as appears to be the practice of the officers of claimant.

It was the duty of the carrier to see to the sufficiency of the barge. Any opinions expressed upon that subject by agents of the insurance company, or by the shipper, form no excuse. The whole responsibility of the sea-worthiness or fitness of the barge, rests with the carrier, and he is responsible for defects in it. Upon a casual view, the barge may have been thought nearly as good as new after the repairs, but at the same time she is proven to be old and rotten. Claimant has failed to sustain the answer, either as to the sea-worthiness of the barge, or the exception of dangers of the river, and the decree must be for libellant.

This case was carried by appeal to the circuit court. and then to the supreme court of the United States, and the opinion of the latter court affirming the judgment of the district court is published in 9 Wall. [76 U. S.] 526. [See Cases Nos. 7,663 and 5,361.]

As to carrier's duty in providing a sea-worthy vessel, see 928 Barrels of Salt [Case No. 10.-272], and cases there cited.

The clause "except the perils or dangers of the rivers or lakes" considered. McArthur v. Sears. 21 Wend. 190.

Dangers of navigation and perils of the sea defined. 1 Pars. Shipp. & Adm. 253; 3 Kent. Comm. 216, and cases there cited.